O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| AQELA AKBARY | ) | NO. SACV 07-624-MAN |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION |
| v. | ) | |
| | ) | AND ORDER |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————————————— | ) | |

Plaintiff filed a Complaint on June 12, 2007, seeking review of the denial by the Social Security Commissioner ("Commissioner") of Plaintiff's claim for supplemental security income ("SSI"). On July 16, 2007, the parties consented to proceed before the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c). The parties filed a Joint Stipulation on February 13, 2008, in which: Plaintiff seeks an order reversing the Commissioner's decision and directing the payment of benefits or, in the alternative, remanding the matter for a new hearing, and awarding Plaintiff costs and reasonable attorneys' fees; and Defendant seeks an order affirming the Commissioner's decision. The Court has taken the parties' Joint Stipulation under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed her application for SSI on February 19, 2004. (Administrative Record ("A.R.") 13, 73-77, 269.) Plaintiff claims to have been disabled since January 14, 2004, due to various aches and pains, depression, and anxiety. (A.R. 13, 14.) Plaintiff has no apparent past relevant work experience. (*Id.*)

The Commissioner denied Plaintiff's claim initially and upon reconsideration. On September 25, 2006, Plaintiff, who was represented by counsel, testified at a hearing before Administrative Law Judge Helen E. Hesse ("ALJ"). (A.R. 267-306.) On October 27, 2006, the ALJ denied Plaintiff's claim (A.R. 10-18), and the Appeals Council subsequently denied Plaintiff's request for review of the ALJ's decision. (A.R. 4-6.)

## SUMMARY OF ADMINISTRATIVE DECISION

In her October 27, 2006 written decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. (A.R. 17.) The ALJ determined that Plaintiff's right wrist fracture, depression, anxiety, and somatoform disorder are severe impairments. (*Id.*) However, Plaintiff's medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. (*Id.*) In a letter dated August 20, 2003, Charles Barbanel, M.D., stated that Plaintiff suffers from major depression and was unable to work at that time. (A.R. 14, 118.) In a "physician's employability report" dated

2

1  September 15, 2003, Daniel Blum, M.D., stated that Plaintiff was unable
2  to work due to emotional distress. (A.R. 14, 125.) However, neither
3  doctor offered any objective finding to support Plaintiff's alleged
4  impairments. (A.R. 15.)

5

6      In a letter dated September 11, 2004, Emmanuel O. Fashakin, M.D.,
7  stated that Plaintiff suffers from recurrent dizziness, anxiety, and
8  depression. (A.R. 14, 177.) In a letter dated December 27, 2004, Dr.
9  Fashakin stated that Plaintiff has recurrent episodes of syncope, *i.e.*,
10 fainting, transient (and usually sudden) loss of consciousness, and
11 allergic rhinitis. (A.R. 14, 117.) However, the work-up for the
12 syncope was negative. (*Id.*) In a letter dated May 16, 2005, Dr.
13 Fashakin stated that Plaintiff has severe anxiety disorder and recurrent
14 episodes of syncope. (A.R. 14, 164.) Plaintiff was prescribed Zoloft
15 and Zyprexa. (*Id.*) The ALJ noted that, despite Dr. Fashakin's repeated
16 diagnoses of Plaintiff, there was no evidence the doctor had conducted
17 any objective testing or mental status examination of Plaintiff. (A.R.
18 14.) Rather, all Dr. Fashakin's diagnoses appear to be based solely on
19 Plaintiff's subjective complaints. (*Id.*)

20

21     At the hearing, medical expert Joseph Malancharuvil, Ph.D.,
22 testified that the Plaintiff has significant subjective complaints that
23 have not been objectively verified. (A.R. 15, 278-79.) In addition to
24 the negative test for syncope, Dr. Malancharuvil noted that a patient
25 with genuine syncope should not have a driver's license, as does
26 Plaintiff. (*Id.*) Dr. Malancharuvil diagnosed Plaintiff with a
27 depressive disorder, NOS, anxiety disorder, NOS, and somatoform
28 disorder, NOS. However, Dr. Malancharuvil concluded that Plaintiff

could perform simple repetitive tasks requiring up to four steps, in a habituated setting, with no hazardous machinery. (*Id.*)

At the hearing, Zerminia Akbary, the Plaintiff's daughter, also testified regarding her mother's symptoms. (A.R. 15.) The ALJ found her testimony of little probative value and gave it little weight. (*Id.*)

The ALJ concluded that Plaintiff's allegations regarding her limitations were not totally credible. (A.R. 17.) The ALJ found that Plaintiff's complaints of recurrent syncope were particularly suspect, because she then held driver's licenses in both New York and California. (A.R. 15.) In observing Plaintiff at the hearing, the ALJ noted that Plaintiff's thoughts did not seem to wander, and she answered all questions alertly and appropriately. (*Id.*) Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act during the time period at issue. (A.R. 17.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. <u>Orn v. Astrue</u>, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Id</u>. The "evidence must be more than a mere scintilla but not necessarily a preponderance." <u>Connett v. Barnhart</u>, 340 F.3d 871, 873 (9th Cir. 2003)(citation omitted).

4

1    The Court will uphold the Commissioner's conclusion when the

2    evidence is susceptible to more than one rational interpretation.  Burch

3    v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  While inferences from

4    the record can constitute substantial evidence, only those "reasonably

5    drawn from the record" will suffice.  Widmark v. Barnhart, 454 F.3d 1063

6    (9th Cir. 2006)(citation omitted).  The Court will not reverse the

7    Commissioner's decision if it is based on harmless error, which exists

8    when it is clear from the record that "the ALJ's error was

9    'inconsequential to the ultimate nondisability determination.'" Robbins

10   v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006)(quoting Stout v.

11   Comm'r, 454 F.3d 1050, 1055-56 (9th Cir. 2006).

12

13                               **DISCUSSION**

14

15   Plaintiff alleges the following four issues:  (1) whether the ALJ

16   properly considered the treating physicians' opinion; (2) whether the

17   ALJ properly considered Dr. Fashakin's opinion; (3) whether the ALJ

18   considered the lay witness testimony; and (4) whether the ALJ properly

19   considered the severity of Plaintiff's mental impairment.  (Joint

20   Stipulation at 2-3.)  For the reasons set forth below, the Court

21   concludes that none of these issues can be addressed appropriately until

22   the record regarding the nature and extent of Plaintiff's alleged mental

23   impairment has been further developed.

24

25   **I.   The ALJ Committed Error In Failing To Develop The Record Adequately**

26        **Regarding Plaintiff's Mental Impairment.**

27

28   In Social Security cases, the law is well-settled that the ALJ has

an affirmative "duty to fully and fairly develop the record and to assure that the claimant's interests are considered . . . even when the claimant is represented by counsel." Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003) (ellipsis in original) (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983); Smolen, 80 F.3d at 1273. "The ALJ's duty to supplement a claimant's record is triggered by ambiguous evidence, the ALJ's own finding that the record is inadequate or the ALJ's reliance on an expert's conclusion that the evidence is ambiguous." Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (citing Tonapetyan v. Halter, 242 F.3d at 1144, 1150 (9th Cir. 2001)). "In cases of mental impairments, this duty is especially important." DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1990); see also Tonapetyan, 242 F.3d at 1144 (ALJ has a heightened duty to develop the record where the claimant is mentally ill and therefore unable to protect her own interests); Higbee v. Sullivan, 975 F.2d 558, 561-62 (9th Cir. 1992). The ALJ's duty to develop the record extends from the basic premise that Social Security hearings are not adversarial in nature. Orcutt v. Barnhart, 2005 WL 2387702, *3 (C.D. Cal. 2005); see also Sims v. Apfel, 530 U.S. 103, 111, 120 S. Ct. 2080, 2085 (2000)("It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits"); 20 C.F.R. § 416.1444 (at the Administrative Hearing, the ALJ "looks fully into the issues").

The ALJ has a duty "to scrupulously and conscientiously probe into, inquire of, and explore all the relevant facts" by procuring the necessary, relevant treatment records. Higbee, 975 F.2d at 558 (quoting Cox v. Califano, 587 F.2d 988, 991 (9th Cir. 1978)); see also 20 C.F.R. § 416.944 (stating that the ALJ may continue the hearing if he believes

material evidence is missing, and may reopen the hearing at any time prior to mailing a notice of decision to receive new and material evidence); 20 C.F.R. § 416.1450(d)(providing that the ALJ may issue subpoenas on his own initiative or at the request of a party); 20 C.F.R. § 416.919a (explaining that the Commissioner may order a consultative examination when a conflict, ambiguity, or insufficiency in the evidence must be resolved). An ALJ can discharge his or her duty to develop the record "in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." Tonapetyan, 242 F.3d at 1150; *see also* Smolen, 80 F.3d at 1288.

In Smolen, 80 F.3d at 1273, the Ninth Circuit held that the ALJ erred in rejecting the uncontroverted opinion of a treating physician. The ALJ rejected that opinion, among other reasons, because the physician did not explain the basis for his "yes or no" responses to leading questions posed by the claimant's attorney, and because the ALJ thought that his responses "might have been based on unwarranted assumptions" about the claimant's impairments. *See* Smolen, 80 F.3d at 1288. The Ninth Circuit observed that "[i]f the ALJ thought he needed to know the basis of [the treating physician's opinion] in order to evaluate them, he had a duty to conduct an appropriate inquiry," and held that the ALJ erred in failing to develop the record further concerning the basis for that opinion. Smolen, 80 F.3d at 1288 (citations omitted); *see* 20 C.F.R. § 416.927(c)(3) ("If the evidence is consistent but we do not have sufficient evidence to decide whether you are disabled, or if after weighing the evidence we decide we cannot

reach a conclusion about whether you are disabled, we will try to obtain additional evidence under the provisions of §§ 416.912 and 416.919 through 416.919h. We will request additional existing records, recontact your treating sources or any other examining sources, ask you to undergo a consultative examination at our expense, or ask you or others for more information.").

In Ballard v. Bowen, 690 F.Supp. 474, 481 (E.D.Va. 1988), the Court remanded a case -- in which the plaintiff claimed to be disabled based upon borderline intelligence -- for further administrative proceedings, because no standardized tests were administered to the plaintiff. The Court found that standardized tests "should be administered and interpreted by a psychologist or psychiatrist qualified by training and experience to perform such an evaluation," and then the ALJ should "consider anew whether plaintiff is disabled." Ballard, 690 F.Supp. at 480-81.

Similarly, in Kang v. Bowen, 1989 WL 281938, *3 (N.D.Cal. 1989), the ALJ discredited the IQ test scores of a primarily Korean-speaking claimant, who alleged disability based upon a low IQ, because "the claimant's test performance [on English-language based testing] is admittedly not a valid representation of her true capacity given the significant language barrier." Kang at 3. Persuaded by the examining consultant's report that it was uncertain what effect the claimant's language difficulties had on the IQ test results, the ALJ found the test results to be invalid. Id. However, instead of obtaining valid and necessary tests to determine the extent of the claimant's disability, the ALJ made findings of fact and conclusions of law without the aid of

reliable IQ scores.  Kang at 4.  The Court held that the ALJ did not perform his duty to fully and fairly develop the evidence, and that "[i]f the ALJ was not satisfied that [the] IQ scores were valid due to language and cultural factors, the ALJ should have ordered other tests to permit the ALJ to make an informed decision."  Id.

In the instant case, the ALJ stated that "none of [Plaintiff's] doctors have offered any objective findings for any of her alleged impairments.  The record is replete with subjective complaints but no objective support." (A.R. 15.)  At the hearing, the medical expert, Dr. Malancharuvil, testified that Plaintiff had significant subjective complaints that had not been objectively verified.  (A.R. 278-79.) Nonetheless, without objectively verifying Plaintiff's mental impairment through appropriate testing, the medical expert, like the doctors whose opinions he criticized, diagnosed Plaintiff with depressive disorder, NOS, anxiety disorder, NOS, and somatoform disorder, NOS. (*Id.*)  Thus, while it appears to be undisputed that Plaintiff suffers from a depressive disorder, the nature and extent of her mental impairment has yet to be assessed through appropriate objective testing.  To date, Plaintiff has only been "treated" by doctors who do not understand her culture and do not speak her language; Plaintiff's daughter translates in non-private sessions where Plaintiff ultimately receives a prescription refill.  (A.R. 283-84.)

Recognizing that Plaintiff was not getting proper treatment, the ALJ questioned the medical expert as follows:

Q:  Okay, so [Plaintiff's] daughter could call Dr.

9

1          Afghan and maybe find out if there are other

2          doctors who understand the claimant's culture,

3          maybe in the Orange County area?

4   A:   Yes, there are, they, they can actually call a

5          referral agency or Family Services and see or

6          somehow and they will be able to find a, a doctor

7          who is from that region of the world.

8   Q:   Call Family Services and, and they'd be able to

9          find it, a doctor that understands the –

10  A:   Yes.

11  Q:   – Afghan and Pakistan culture?

12  A:   **Right, right, right because she definitely needs**

13         **the psychological evaluation and counseling and –**

14  Q:   From someone who understands her culture?

15  A:   Culture, absolutely.  Culturally-sensitive person

16         who can [INAUDIBLE].

18 (A.R. 299-300; emphasis added.)

20   In concluding the hearing, the ALJ advised Plaintiff's attorney,

21 Daniel Keenan,

23   I want you to get all of the records from the psychiatrist[s],

24   both here and in New York.  Also follow-up or have the

25   client's daughter follow-up on a cultur[ally]-appropriate

26   psychiatrist for mental health purposes and make an

27   appointment to see them.  I don't know if I can have a

28   consultative exam done with somebody that is culturally-

1    sensitive to Farsi, so I'm gonna put the burden - or
2    culturally-sensitive to Afghanistan and Pakistan, **so I'm gonna**
3    **put the burden on you.**  It's your burden to prove anyway and
4    to get some examinations there.

5

6    (A.R. 305-06; emphasis added.)  The ALJ gave Plaintiff two weeks to
7    obtain a proper referral and submit a status report.  (A.R. 306.)
8    Plaintiff's counsel subsequently explained to the ALJ, in a fax sent in
9    a timely manner, that efforts to contact the doctor recommended by the
10   medical expert had been unsuccessful, and Plaintiff had been unable to
11   locate a suitable doctor on her own.  (A.R. 8.)

12

13   While it is Plaintiff's responsibility to prove disability, it is
14   indisputable that "in Social Security cases the ALJ has a special duty
15   to fully and fairly develop the record and to assure that the claimant's
16   interests are considered." Smolen, 80 F.3d at 1288 (quoting Brown, 713
17   F.2d at 443).  There is no authority to support the ALJ's decision to
18   shift her burden of developing the record to Plaintiff and/or her
19   daughter, because the ALJ's task of meeting her burden might be
20   difficult.  From the evidence of record, it is clear that the ALJ made
21   no effort, following Plaintiff's failure to secure an appropriate
22   doctor, to meet the ALJ's own burden of ascertaining the true nature and
23   extent of Plaintiff's mental impairment.  As a result, the ALJ failed to
24   fully and fairly develop the record regarding Plaintiff's mental
25   impairment.

26

27   As the ALJ recognized that Plaintiff needed to see a culturally-
28   appropriate doctor to obtain a proper disability determination, the ALJ

should have ensured that a suitable consultative examination was obtained.  Once the ALJ was made aware that Plaintiff failed to receive the requisite follow-up treatment, the ALJ should have met **her burden** of developing the record.

For the foregoing reasons, the ALJ's rejection of Plaintiff's claimed mental impairment without properly developing the record, constitutes error.  Accordingly, the ALJ's decision regarding Plaintiff's claimed mental impairment is reversed.

**II.  <u>Remand Is Required</u>.**

Here, remand is appropriate to allow the ALJ the opportunity to properly develop the record.  *See, e.g.,* <u>Benecke v. Barnhart</u>, 379 F.3d 587, 593 (9th Cir. 2004)(where ALJ erred by discounting treating physicians' opinions, remand for further proceedings is appropriate if enhancement of the record would be useful); <u>Higbee</u>, 975 F.2d at 561-62 (remanding case to develop the record); <u>McAllister v. Sullivan</u>, 888 F.2d 599, 603 (9th Cir. 1989)(remand appropriate to remedy defects in the record).

CONCLUSION

Accordingly, for the reasons stated above, the denial of benefits is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.  Judgment shall be entered reversing the decision of the Commissioner, and remanding the matter for further administrative action consistent with this Memorandum

Opinion and Order.

     IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

     **LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: August 14, 2008

                              _____
                                        /s/
                                 MARGARET A. NAGLE
                        UNITED STATES MAGISTRATE JUDGE

13